IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BLACKBERRY LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-155 (RGA) |
| | ) | |
| NOKIA CORPORATION, NOKIA SOLUTIONS AND NETWORKS OY, NOKIA SOLUTIONS AND NETWORK HOLDINGS USA INC. and NOKIA SOLUTIONS AND NETWORKS US LLC, | ) ) ) ) ) | REDACTED - PUBLIC VERSION FILED 07/27/2017 |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF NOKIA'S MOTION TO DISMISS
BLACKBERRY LIMITED'S CLAIMS OF WILLFUL INFRINGEMENT, INDIRECT
INFRINGEMENT, AND DIRECT INFRINGEMENT IN ITS AMENDED COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Paul A. Bondor
Alan S. Kellman
Jonas R. McDavit
Lauren M. Nowierski
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

July 20, 2017

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

NATURE AND STAGE OF THE PROCEEDING....................................................................2

SUMMARY OF ARGUMENT ................................................................................................3

STATEMENT OF FACTS .......................................................................................................3

      A.     BlackBerry's Infringement Allegations....................................................................4

      B.     BlackBerry's Presuit Knowledge Allegations ........................................................4

      C.     BlackBerry's Post-Suit Knowledge Allegations.....................................................5

LEGAL STANDARD ..............................................................................................................6

ARGUMENT ...........................................................................................................................6

I.     The Court Should Dismiss All Willful Infringement Claims. ...........................................6

      A.     The Court Should Dismiss BlackBerry's Presuit Willful Infringement
           Claims. ...................................................................................................................6

           1.     BlackBerry Does Not Plausibly Allege That Nokia Had Presuit
                 Knowledge Of Ten Of The Patents-in-Suit. ................................................7

                 a.     Nokia's Alleged Prosecution Activities Cannot Show That
                     Nokia Knew Of The '246, '772, '683, and '829 Patents. ...............7

                 b.     BlackBerry Cannot Rely On Alcatel-Lucent's Prosecution
                     Activities To Demonstrate That Nokia Knew Of The '192
                       And '202 Patents.........................................................................8

                 c.     Nokia Siemens Networks' Diligence Of Nortel's Massive
                     Patent Portfolio Does Not Support An Inference That
                     Nokia Had Presuit Knowledge Of The Nortel Patents. ..................9

           2.     BlackBerry Does Not Plausibly Allege That Nokia Had Presuit
                 Knowledge Of Its Alleged Infringement Of The '090 Patent...................10

                 a.     BlackBerry's Complaint (D.I. 1) Cannot Show That Nokia
                     Knew Of The Alleged '090 Patent Infringement..........................10

                 b.     BlackBerry's Notice Letters (D.I. 21, Ex. L) Cannot Show
                     That Nokia Knew Of Its Alleged Infringement Of The '090
                     Patent.........................................................................................11

**Page**

B.      BlackBerry Does Not Plausibly Allege "Egregious" Misconduct.........................12

II.     The Court Should Dismiss All Inducement And Contributory Infringement Claims. ...................................................................................................................13

A.      BlackBerry's Amended Complaint Lacks Factual Allegations That Plausibly Establish The Requisite Knowledge For Presuit Indirect Infringement...........................................................................................13

B.      BlackBerry's Amended Complaint Lacks Factual Allegations That Plausibly Establish The Requisite Specific Intent To Induce Infringement. .........14

C.      BlackBerry's Amended Complaint Lacks Factual Allegations That Plausibly Show Contributory Infringement. ...........................................15

III.    The Court Should Dismiss All Direct Infringement Claims................................16

A.      The Court Should Dismiss BlackBerry's Direct Infringement Claims Against Nokia Corp., NSN Oy, and NSN Holdings USA. ....................................16

B.      This Court Cannot Infer More Than A Mere Possibility Of Infringement............17

CONCLUSION....................................................................................................................20

## TABLE OF AUTHORITIES

**Pages**

### Cases

*Adidas Am., Inc. v. Skechers USA, Inc.*,
  No. 3:16-1400, 2017 WL 2543811 (D. Or. June 12, 2017) ............................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 3, 15, 17

*Atlas IP v. Exelon Corp.*,
  189 F. Supp. 3d 768 (N.D. Ill. 2016) ........................................................................ 11, 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 6, 15

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
  No. 2:16-00801, 2017 WL 58572 (D. Nev. Jan. 4, 2017) ................................................ 12

*Chestnut Hill Sound, Inc. v. Apple Inc.*,
  No. 15-261-RGA, D.I. No. 53 (Feb. 29, 2016) ................................................................. 15

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015) ..................................................................................................... 14

*Cont'l Circuits LLC v. Intel Corp.*,
  No. 16-2026, 2017 WL 2651709 (D. Ariz. June 19, 2017) .............................................. 13

*DermaFocus LLC v. Ulthera, Inc.*,
  201 F. Supp. 3d 465 (D. Del. 2016) ................................................................................... 8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) .......................................................................................................... 14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) .................................................................................................. 7, 12

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002) ............................................................................................... 6

*Intel Corp. v. Broadcom Corp.*,
  173 F. Supp. 2d 201 (D. Del. 2001) ................................................................................. 11

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
  No. 16-134-GMS, 2017 WL 1312942 (D. Del. Apr. 5, 2017) ......................................... 14

**Pages**

*IpVenture Inc. v. Lenovo Grp. Ltd.*,
    No. 11-588-RGA, 2012 WL 2564893 (D. Del. June 29, 2012)........................................ 8

*M2M Sols. LLC v. Telit Commc'ns PLC*,
    No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ................................ 16, 17

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012)................................................................................ 7

*Network Managing Sols. v. AT&T Inc.*,
    No. 16-295-RGA, 2017 WL 472080 (D. Del. Feb. 3, 2017) .......................................... 15

*Princeton Dig. Image Corp. v. Ubisoft Entm't SA*,
    No. 13-335-LPS, 2016 WL 6594076 (D. Del. Nov. 4, 2016)......................................... 13

*SIPCO, LLC v. Streetline, Inc.*,
    No. 16-830-RGA, 2017 WL 277398 (D. Del. Jan. 20, 2017).......................................... 11

*Spherix Inc. v. Juniper Networks, Inc.*,
    No. 14-578-SLR, 2015 WL 1517508 (D. Del. Mar. 30, 2015) ........................................ 8

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)................................................................................... 8, 9

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*,
    No. 16-581, D.I. No. 20 (D. Del. Mar. 7, 2017) .......................................................... 16

*Varian Med. Sys., Inc. v. Elekta AB*,
    No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 21, 2016).................................... 9, 13

*Zimmer Surgical, Inc. v. Stryker Corp.*,
    No. 16-679-RGA, 2017 WL 1296026 (D. Del. Apr. 6, 2017)...................................... 7, 9

## **Rules**

FED. R. CIV. P. 8(a)(2)................................................................................................................ 6

## <u>INTRODUCTION</u>

Rather than respond to Nokia's June 5, 2017 motions to dismiss, BlackBerry chose to amend its complaint ("Amended Complaint"), presumably to address its deficient original pleading.[1]   But BlackBerry did not fix those deficiencies, and Nokia moves to dismiss the Amended Complaint.   In its latest pass, BlackBerry expressly concedes that it has never compared "the claims of the Asserted Patents to the structure and operation of the Infringing Products."   (D.I. 21, ¶ 66.)   BlackBerry nonetheless alleges that Nokia directly, indirectly, and willfully infringes the eleven patents-in-suit by virtue of standards-based reads and conclusory allegations that the accused Nokia products practice the standards alleged to infringe.   But the Amended Complaint relies on allegations that are internally inconsistent, does not contain facts legally sufficient to support a plausible claim, and raises impermissible uncertainty as to whether Nokia's or its customers' conduct allegedly infringes any asserted claims.   BlackBerry's attempt to cure its defective pleading thus fails.

First, the Court should dismiss BlackBerry's presuit willful and indirect infringement claims.   To state a claim for willful or indirect infringement, the patentee must state facts that plausibly show the accused infringer has knowledge of the patents-in-suit and of the alleged infringement.   But the Amended Complaint contains the same facially implausible and legally insufficient allegations of the original pleading regarding Nokia's presuit knowledge.   For ten of the patents-in-suit, the Amended Complaint contains no facts that make Nokia's presuit knowledge of those patents plausible.   For the eleventh patent-in-suit, the Amended Complaint contains no facts that make Nokia's presuit knowledge of infringement plausible.

---

[1] Except where noted, "Nokia" refers collectively to Nokia Corporation ("Nokia Corp."), Nokia Solutions and Networks Oy ("NSN Oy"), Nokia Solutions and Network US LLC ("NSN US LLC"), and Nokia Solutions and Networks Holdings USA Inc. ("NSN Holdings USA").

Second, the Court also should dismiss BlackBerry's post-suit willful and indirect infringement claims because the Amended Complaint does not contain legally sufficient facts to sustain those claims. BlackBerry pled no facts to support its naked legal conclusion that Nokia's behavior has been "egregious" at any time. Similarly, BlackBerry pled no facts to support its claims that Nokia had specific intent to induce others to infringe, and BlackBerry's contributory infringement claims are boilerplate recitations of the required elements.[2]

Finally, BlackBerry impermissibly lumps together its infringement claims against all four defendants, even though there are no facts to support a direct infringement claim against each defendant. That is particularly true given BlackBerry's candid admission that it has never purchased or compared any of the accused products with any of the patents-in-suit or against any alleged infringing standard. Under the requisite pleading standards, the Amended Complaint does not demonstrate that BlackBerry is entitled to relief on any of its infringement claims, and the Court should grant Nokia's motion to dismiss.

## NATURE AND STAGE OF THE PROCEEDING

On June 5, 2017, Nokia moved to dismiss BlackBerry's February 14, 2017 complaint for patent infringement ("Complaint") on several grounds, including under Fed. R. Civ. P. 12(b)(6) for willful and indirect infringement (on all patents) and direct infringement (on six patents) and under Fed. R. Civ. P. 12(b)(1) for the claim relating to U.S. Patent 8,494,090. (D.I. 11, 14.) In response, BlackBerry amended its Complaint on June 26, 2017. (D.I. 21, 22.) Nokia now moves to dismiss all of BlackBerry's claims in its Amended Complaint on several grounds.[3]

---

[2] At a minimum, BlackBerry's Complaint failed to state a direct infringement claim for six patents-in-suit and thus failed to put Nokia on notice of infringement for at least those patents. (D.I. 15 at 16-20.)

[3] Nokia also renews its motion to dismiss the '090 patent claims in a concurrently-filed motion.

## SUMMARY OF ARGUMENT

1.     The Court should dismiss all willful infringement claims because: (1) BlackBerry does not plead a factually or legally plausible claim that Nokia had presuit knowledge of the patents-in-suit or of any alleged infringement; and (2) BlackBerry does not plead facts to support its legal conclusion that Nokia's conduct was "egregious," and thus cannot support any willful infringement claim.

2.     The Court should dismiss all indirect infringement claims because: (1) BlackBerry does not plead a factually or legally plausible allegation that Nokia had presuit knowledge of the patents-in-suit or of any alleged infringement; (2) the Amended Complaint lacks facts that would plausibly show specific intent to induce infringement; and (3) BlackBerry's contributory infringement claims are formulaic recitations of claim elements, which are therefore deficient as pled.

3.     The Court should dismiss all direct infringement claims because, even accepting the facts in BlackBerry's Amended Complaint as true, this Court cannot infer more than a mere possibility of infringement.  *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Amended Complaint accuses all defendants of direct infringement without any facts that make such a claim plausible, and for each patent, the Amended Complaint fails to adequately link the accused products to infringement of any asserted claim.

## STATEMENT OF FACTS

BlackBerry accuses Nokia of directly, indirectly, and willfully infringing U.S. Patent Nos. 6,996,418 ("the '418 patent"), 7,529,305 ("the '305 patent"), 8,243,683 ("the '683 patent"), 8,254,246 ("the '246 patent"), 8,494,090 ("the '090 patent"), 8,644,829 ("the '829 patent"), 8,861,433 ("the '433 patent"), 8,897,192 ("the '192 patent"), 9,125,202 ("the '202 patent"), 9,253,772 ("the '772 patent"), and 9,426,697 ("the '697 patent") ("the patents-in-suit") (D.I. 21).

## A.    BlackBerry's Infringement Allegations

BlackBerry accuses "Nokia" of infringement.  BlackBerry describes foreign defendants Nokia Corp. and NSN Oy as Finnish companies with principal places of business in Espoo, Finland.  (D.I. 21, ¶ 9-10.)  BlackBerry describes Nokia Corp.'s business as "the parent company of the consolidated operating segments that Nokia designates as the 'Nokia Group.'"  (*Id.*, ¶ 9.)  BlackBerry describes NSN Oy's business as "operat[ing] and overse[ing] the 'Nokia Networks' business unit," and asserts that Nokia Networks "develops, makes, and sells products," without regard to geography.  (*Id.*, ¶ 10.)  BlackBerry describes domestic defendants NSN Holdings USA and NSN US LLC as Delaware corporations with principal places of business in Texas.  (*Id.*, ¶¶ 11-12.)  BlackBerry describes NSN Holdings USA as a company that "provides support services" to Nokia customers in the United States, and NSN US LLC as a company that sells Nokia's products in the United States.  (*Id.*, ¶ 11.)

BlackBerry's infringement claims depend on the alleged essentiality of the claims in each patent to parts of the LTE and UMTS/UTRAN mobile network standards.  (*Id.*, ¶¶ 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64.)  BlackBerry concedes that it did not compare the claims of the patents-in-suit to the structure and operation of the accused Nokia products.  (*Id.*, ¶ 66.)  And BlackBerry does not allege facts connecting Nokia's products to the allegedly infringing portions of those standards.  (*Id.*, ¶¶ 66-71, 117, 134-38, 140, 154, 156, 169-70, 172, 184, 186-89, 191, 203, 205-08, 210, 224-29, 231, 243-45, 247, 263-71, 273, 286, 288, 304-06, 308.)

## B.    BlackBerry's Presuit Knowledge Allegations

For all but the '090 patent, BlackBerry did not amend its allegations of presuit knowledge from the Complaint.  (*See* D.I. 21, ¶ 157 (alleging Nokia had knowledge of the '090 patent because ███████████████████████████  Those allegations remain deficient.  (*See* D.I. 15 at 2-3.)

**Prosecution Activities:**  BlackBerry alleges that Nokia became aware of the '246, '090, '772, '683, '829, '192, and '202 patents through some unidentified Nokia entity's (or the later-acquired Alcatel-Lucent's) prosecution of unrelated patent applications.  (D.I. 21, ¶¶ 74-90.)  But BlackBerry does not allege that any of the patents-in-suit actually were mentioned during the prosecution of any Nokia (or Alcatel-Lucent) patent.  Instead, BlackBerry alleges that ***patent applications related to*** the patents-in-suit were cited during prosecution, and infers, without any factual basis, that Nokia later became aware of the patents-in-suit themselves.  (*Id.*, ¶¶ 76, 78, 80, 82, 84, 87, 89.)  BlackBerry never alleges any facts to support its assertion that any Nokia defendant knew of the alleged infringement.  (*Id.*, ¶¶ 85, 90.)

**Nortel Diligence:**  The '418, '246, '090, '305, and '202 patents (collectively, "Nortel Patents") originated from Nortel Networks Corporation's patent portfolio.  (D.I. 21, ¶¶ 91-109.)  That portfolio contained more than 6,000 patents and patent applications.[4]  BlackBerry alleges that Nokia knew about the Nortel Patents from Nokia Siemens Networks' access to the entire Nortel patent portfolio from June 19, 2009 to July 24, 2009.  (*Id.*)  But as of those dates, only the '305 patent had actually issued.  (*Id.*; Nortel Patents.)  BlackBerry alleges no facts to suggest that knowledge of the patent applications resulted in knowledge of the issued patents or that Nokia did pay or would have paid special attention to the five Nortel Patents.

## C.     BlackBerry's Post-Suit Knowledge Allegations

BlackBerry alleges that Nokia had knowledge of its infringement of all eleven patents-in-suit from BlackBerry's February 14, 2017 notice letters and from the Complaint.  (D.I. 21, ¶ 72.)  But the Complaint failed to state a claim for direct infringement for the '090, '433, '192, '202,

---

[4] Nokia respectfully requests that the Court take judicial notice of this well-known fact.  (D.I. 16, Ex. A.)

'772 and '697 patents.  (D.I. 15 at 16-20.)  Furthermore, BlackBerry's February 14, 2017 notice

letters lack detail and support for BlackBerry's infringement allegations.  (*See* D.I. 21, Ex. L.)

## LEGAL STANDARD

A pleading stating a claim for relief must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "[A] plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  "[C]ourts are

not required to credit bald assertions or legal conclusions improperly alleged in the complaint."

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

## ARGUMENT

### I.      The Court Should Dismiss All Willful Infringement Claims.

The Court should dismiss all of BlackBerry's willful infringement claims for two

separate reasons.  First, all presuit willfulness claims should be dismissed because the Amended

Complaint does not plead adequate presuit notice of the patents-in-suit or of the alleged

infringement.   Second, although BlackBerry alleges that Nokia's conduct was "egregious,"

BlackBerry has not stated any facts to support that legal conclusion at any time.

### A.      The Court Should Dismiss BlackBerry's Presuit Willful Infringement Claims.

For at least ten of the patents-in-suit, BlackBerry does not allege adequate presuit

knowledge of the patents-in-suit themselves.   For the eleventh patent—the '090 patent[5]—

BlackBerry does not allege Nokia had adequate presuit knowledge of any alleged infringement.

---

[5] Although this argument equally applies to BlackBerry's allegations concerning the '433, '192, '202, '772, and '697 patents, the Court need not decide that issue because BlackBerry did not adequately allege that Nokia had presuit knowledge of those patents themselves. *See* Section I.A.1.

> **1.      BlackBerry Does Not Plausibly Allege That Nokia Had Presuit Knowledge Of Ten Of The Patents-in-Suit.**

A threshold requirement for any willful infringement claim is that the alleged infringer knew of the patent and of the alleged infringement.  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct.").  Because that knowledge is indispensable to BlackBerry's claim, BlackBerry attempts to manufacture that knowledge based exclusively on a series of fanciful inferences.  But none plausibly demonstrates that Nokia knew of any of the patents-in-suit (or of Nokia's alleged infringement) before BlackBerry filed the Complaint.

> **a.      Nokia's Alleged Prosecution Activities Cannot Show That Nokia Knew Of The '246, '772, '683, and '829 Patents.**

BlackBerry's allegations concerning Nokia's prosecution activities cannot support an inference that Nokia knew about '246, '772, '683, and '829 patents.  "To willfully infringe a patent, the patent must exist and one must have knowledge of it."  First, "mere knowledge of one patent in a ***patent family*** . . . does not establish actual knowledge of a different patent in that family."  *Zimmer Surgical, Inc. v. Stryker Corp*., No. 16-679-RGA, 2017 WL 1296026, at *5 (D. Del. Apr. 6, 2017) (citation omitted) (emphasis added); *see also MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012)) (finding knowledge of a patent is "too tenuous" to support an inference that defendants knew of the reexamined patent).  Because all presuit knowledge allegations for the '246 and '772 patents concern related patents and ***not*** the patents themselves, those allegations are insufficient. (D.I. 21, ¶¶ 74-80.)[6]

Second, knowledge of a ***patent application*** likewise is insufficient to infer knowledge of the later-issued patent.  "To willfully infringe a ***patent***, ***the patent must exist*** and one must have

---

[6] The same is true for the '090 patent with respect to the allegations concerning Nokia's prosecution activity, but BlackBerry alleges other grounds for presuit knowledge of that patent.

knowledge of *it*." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). (emphasis added); *see also IpVenture Inc. v. Lenovo Grp. Ltd.*, No. 11-588-RGA, 2012 WL 2564893, at *2 (D. Del. June 29, 2012) (dismissing a willful infringement claim where the events allegedly establishing notice occurred before the patent issued).  Because BlackBerry's presuit knowledge allegations for the '683 and '829 patents relate only to patent *applications*, those allegations do not permit an interference that Nokia knew about the '683 and '829 patents presuit.  (*See* D.I. 21, ¶¶ 86-90.)

Finally, even had the patents themselves been cited during prosecution, referencing patents during prosecution alone is insufficient to support a willfulness claim.  *E.g.*, *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016); *Spherix Inc. v. Juniper Networks, Inc.*, No. 14-578-SLR, 2015 WL 1517508, at *3 (D. Del. Mar. 30, 2015) ("The fact that the '123 patent was referenced during prosecution of two of defendant's over 1,700 patents . . . is not compelling evidence of knowledge. . . ."). BlackBerry does not allege that any person aware of the patent applications during prosecution was connected to individuals responsible for the accused products, and the allegations concerning Nokia's prosecution activities cannot show that Nokia had presuit knowledge of the patents-in-suit or of the alleged infringement.

### b.      BlackBerry Cannot Rely On Alcatel-Lucent's Prosecution Activities To Demonstrate That Nokia Knew Of The '192 And '202 Patents.

BlackBerry's allegations concerning Nokia's alleged presuit knowledge of the '192 and '202 patents are even more attenuated.  For those patents, BlackBerry alleges that Alcatel-Lucent—not Nokia—gained knowledge of the patents because *related* applications to the patents-in-suit were cited during Alcatel-Lucent's prosecution of unrelated patents.  Indeed, BlackBerry alleges that Alcatel-Lucent became aware of these patents when their *parent and great-grandparent* applications, respectively, were cited during prosecution of Alcatel-Lucent

patents.  That cannot support a knowledge allegation.  *Zimmer*, 2017 WL 1296026, at \*5-6.
Moreover, BlackBerry alleges that Nokia Corp.'s subsequent acquisition of non-party Alcatel-
Lucent in 2016 somehow transferred that already insufficient knowledge to Nokia Corp. and the
other three defendants.  (*See* D.I. 21, ¶¶ 81-85.)  But BlackBerry does not allege any facts to
explain how that acquisition allegedly conferred Alcatel-Lucent's alleged patent knowledge on
any defendant. *See, e.g.*, *Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871-LPS, 2016 WL
3748772, at \*5 (D. Del. July 12, 2016) ("Plaintiff needs to set out more than just the bare fact of
the parent/subsidiary relationship in order to make out a plausible claim that the **U.S. Defendants**
had the requisite knowledge of the patent-in-suit as of April 2006 or thereafter.").  The
allegations concerning Alcatel-Lucent's prosecution activities simply cannot show that Nokia
had the requisite presuit knowledge of the '192 and '202 patents or of the alleged infringement.

### c.   Nokia Siemens Networks' Diligence Of Nortel's Massive Patent Portfolio Does Not Support An Inference That Nokia Had Presuit Knowledge Of The Nortel Patents.

BlackBerry's allegations concerning the Nortel Patents cannot confer presuit knowledge
for at least three reasons.  First, during the alleged diligence, only the '305 patent had issued.
Thus, BlackBerry's allegations for the '418, '246, '090, and '202 patents relate to knowledge of
pending applications.  But knowledge of pending applications cannot support an inference of
knowledge of issued patents. *State Indus.*, 751 F.2d at 1236; *see Princeton Dig. Image Corp. v.
Ubisoft Entm't SA*, No. 13-335-LPS, 2016 WL 6594076, at \*7, 11-12 (D. Del. Nov. 4, 2016). ("It
simply is not reasonable to infer—again, without more—that Defendants would have had actual
knowledge of the entirety of such a broad a span of art during [] prosecution … and/or
thereafter.")

Second, BlackBerry does not connect any alleged diligence of the 6,000+ asset Nortel
portfolio to any of the patents-in-suit.  (D.I. 16, Ex. A.)  It is implausible to infer that Nokia

obtained knowledge of all 6,000 patent assets and their alleged infringement, particularly in the one month period BlackBerry alleges the diligence occurred.  (*See* D.I. 21, ¶¶ 91-109); *see also MONEC*, 897 F. Supp. 2d at 233 ("MONEC fails to explain how Defendants 'would have obtained' selective knowledge of a specific patent in a specific case, without wading through the pool of more than two hundred cases involving different patents.").

Finally, BlackBerry's allegation that Nokia was "aware that Nortel entities made SSO [(standard setting organization)] commitments," including to the Third Generation Partnership Project ("3GPP") in June 2011 does not cure those deficiencies.  (*See* D.I. 21, ¶ 108.) BlackBerry does not allege that *Nortel* disclosed any of the patents-in-suit.  (*See id.*, ¶ 65.) Instead, *BlackBerry* disclosed patents to 3GPP *after* the alleged diligence.  (*Id.*)  For at least these reasons, BlackBerry's allegations about the Nortel diligence do not support a plausible inference of presuit knowledge of any Nortel Patent or of any alleged infringement.

### 2.  BlackBerry Does Not Plausibly Allege That Nokia Had Presuit Knowledge Of Its Alleged Infringement Of The '090 Patent.

Although BlackBerry alleges that Nokia had presuit knowledge of the '090 patent because of ████████████████████████████[7] BlackBerry fails to state a plausible claim that Nokia had any knowledge—presuit or otherwise—of any alleged *infringement* of the '090 patent.  (*See* D.I. 21, ¶ 157.)  BlackBerry claims that Nokia had knowledge of alleged infringement of the '090 patent from two sources:  (a) the February 14, 2017 notice letters, and (b) the original Complaint in this action.  (*Id.*)  But neither source provides an adequate basis.

### a.  BlackBerry's Complaint (D.I. 1) Cannot Show That Nokia Knew Of The Alleged '090 Patent Infringement.

As Nokia described in its original motion to dismiss, BlackBerry's allegations in its original Complaint concerning the '090 patent were woefully deficient.  (D.I. 12, 15.)  First, the

---

[7] BlackBerry's presuit knowledge allegations only relate to defendant Nokia Corp.

Complaint did not allege a single '090 patent claim Nokia allegedly infringed.  (D.I. 15, § III; D.I. 1, ¶¶ 143-56.)  Because the Complaint did not identify any claim allegedly infringed, it cannot form the basis for Nokia's alleged knowledge of infringement.  *SIPCO, LLC v. Streetline, Inc.*, No. 16-830-RGA, 2017 WL 277398, at *3 (D. Del. Jan. 20, 2017) (finding that a patentee must "write a complaint (construing the allegations in the light most favorable to the plaintiff) that makes it plausible to think a defendant has infringed at least one claim").

Notwithstanding that obvious deficiency, the Complaint also lacked facts that support a plausible allegation that a standards-compliant product would meet all claim elements for any claim of the '090 patent.  (D.I. 1, ¶¶ 149-56); *E.g.*, *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016) ("[F]actual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement—they are merely compatible with infringement.").  For example, claim 1 of the '090 patent requires, among other things, "transmitting the plurality of scrambled bits within a data frame to a remote communication device."  ('090 patent, 13:31-45.)  The Complaint never addressed that limitation, either in the context of an LTE specification or an accused Nokia product.  Accordingly, for this additional reason, BlackBerry's Complaint cannot form the basis for an inference that Nokia knew of its alleged infringement.[8]

### b. BlackBerry's Notice Letters (D.I. 21, Ex. L) Cannot Show That Nokia Knew Of Its Alleged Infringement Of The '090 Patent.

Nokia's February 14, 2017 notice letters also cannot show that Nokia knew of the alleged '090 patent infringement, because those notice letters contain the same level of detail as the

---

[8] Further, the parties agree that ███████████████████████ (D.I. 12; D.I. 21, ¶ 157.) Thus, at the time of the 2017 Complaint, Nokia could not possibly have known that it was infringing the '090 patent because infringement requires conduct ***without authority***.  35 U.S.C. § 271(a); *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 206 (D. Del. 2001) ("Acts can be infringements only if they are carried out 'without authority.'").  For that separate reason, the Amended Complaint cannot show that Nokia knew of any alleged infringement.

Complaint.  (*See* D.I. 21, Ex. L.)  In addition, those letters fail to provide a single claim chart mapping any accused product to any '090 patent claim.  Because BlackBerry's notice letters contained no more information than the Complaint, and because the Complaint cannot form the basis for Nokia's alleged knowledge of infringement, the Amended Complaint likewise fails to plausibly show that Nokia had knowledge of the '090 patent infringement at any time.  For at least those reasons, BlackBerry's '090 patent allegations do not support a plausible inference of presuit knowledge of any infringement of the '090 patent.

In sum, none of BlackBerry's allegations concerning alleged knowledge is sufficient to create a plausible inference that Nokia had presuit knowledge of the patents-in-suit or the alleged infringement, which is critical to BlackBerry's willfulness allegations.  *Halo*, 136 S. Ct. at 1933.  Accordingly, the Court should grant Nokia's motion to dismiss all presuit willfulness claims.

### B.  BlackBerry Does Not Plausibly Allege "Egregious" Misconduct.

Although BlackBerry says Nokia's infringement was "egregious"—as it must to support a willful infringement claim—BlackBerry offers no facts to support that formulaic recitation.  *Halo*, 136 S. Ct. at 1935 (explaining that Section 284 "limit[s] the award of enhanced damages to *egregious cases* of misconduct *beyond typical infringement*" (emphasis added)); *CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 2:16-00801, 2017 WL 58572, at *6 (D. Nev. Jan. 4, 2017) ("Although a willful infringement plaintiff need no longer allege objective recklessness [after *Halo*], he must allege some 'egregious . . . misconduct' occurring before the initial claim of infringement was filed . . . ." (alteration in original) (quoting *Halo*, 136 S. Ct. at 1935)).  Even in its Amended Complaint, BlackBerry provides only a boilerplate assertion of "egregious behavior":

> In committing acts of direct and indirect infringement, Nokia has committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of the valid [] patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of the valid and enforceable [] patent.  Nokia's willful and deliberate infringement warrants an award of enhanced damages.

(D.I. 21, ¶ 125; *see also id.*, ¶¶ 146, 162, 178, 197, 216, 237, 253, 279, 294, and 314.)

BlackBerry does not allege a single fact that supports "egregious conduct."  *See Cont'l Circuits LLC v. Intel Corp.*, No. 16-2026, 2017 WL 2651709, at *8 (D. Ariz. June 19, 2017) (adding the word "egregious" to boiler plate willfulness claim "is merely a conclusion, which is not sufficient" to plead willfulness).  Moreover, adding allegations of post-suit knowledge cannot cure deficient egregiousness allegations in the original complaint.  *See Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:16-1400, 2017 WL 2543811, at *4 (D. Or. June 12, 2017) ("A patentee, however, must have a good faith basis for alleging willful infringement at the time when the [original] complaint is filed." (citation omitted)).  Because BlackBerry cannot support its egregiousness assertions, the Court should dismiss all of BlackBerry's willful infringement claims.  *E.g.*, *Varian*, 2016 WL 3748772, at *8 (dismissing claims because the complaint did not sufficiently articulate how "making, using or offering for sale [the accused products] actually amounted to an egregious case of infringement"); *Princeton Dig. Image Corp.*, 2016 WL 6594076, at *11-12 ("[T]he [Amended Complaint] does not sufficiently articulate how [the accused infringer]'s actions during a short, three-month period of time [between the original and amended complaints] amount to an 'egregious' case of infringement.").

## II.     The Court Should Dismiss All Inducement And Contributory Infringement Claims.

### A.     BlackBerry's Amended Complaint Lacks Factual Allegations That Plausibly Establish The Requisite Knowledge For Presuit Indirect Infringement.

To support claims for induced or contributory infringement, a patentee must demonstrate that an accused infringer knew about the patents-in-suit, knew that the induced acts constitute

patent infringement (for inducement), and knew that the combination for which his component was especially designed was both patented and infringing (for contributory infringement). *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("[L]iability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute infringement. . . .  Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement"); *id.* at 763 ("[A] violator of § 271(c) must know that the combination for which his component was especially designed was both patented and infringing." (internal quotations and citations omitted)).  As explained above, none of BlackBerry's allegations supports inferring presuit knowledge of the patents-in-suit or of the alleged infringement.  Accordingly, BlackBerry's presuit claims for induced and contributory infringement should be dismissed for the same reasons as the willfulness claims.

### B.   BlackBerry's Amended Complaint Lacks Factual Allegations That Plausibly Establish The Requisite Specific Intent To Induce Infringement.

BlackBerry's allegations for all patents-in-suit are insufficient to sustain induced infringement because BlackBerry does not explain what instructions Nokia allegedly provided to its "end-user customers" or "third parties in the United States" (*see, e.g.*, D.I. 21, ¶¶ 120-21) that led those third parties to allegedly infringe.  *IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*, No. 16-134-GMS, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017) ("[Plaintiff] failed to adequately allege how [Defendant] provided technical support services or detailed instructions promoting the use of the VoIP application *and* the server system in an infringing manner.").  Nor does BlackBerry explain how each defendant allegedly "encourages" or "aids" other defendants

to directly infringe.  (*See e.g.*, D.I. 21, ¶ 144.)  Rather than articulating what instructions were provided or how Nokia allegedly provided such instruction to alleged direct infringers, BlackBerry simply alleges that encouragement, aid, or technical support was provided.  (*E.g. id.*)  Notwithstanding the implausibility of those allegations on a defendant-by-defendant basis (*see infra* Section III.A), such generic allegations do not support a specific intent to induce infringement, particularly here, where the Amended Complaint fails to provide adequate direct infringement allegations.  Section III, *infra*; *see also Network Managing Sols. v. AT&T Inc.*, No. 16-295-RGA, 2017 WL 472080, at *1 (D. Del. Feb. 3, 2017) ("Defendants' participation in standard setting does not create a plausible claim Defendants possessed specific intent to induce another's infringement.")  As described in Section III, BlackBerry does not plausibly allege that the direct infringers implement the allegedly infringing portions of the LTE and UMTS/UTRAN specifications.  Likewise, the Amended Complaint never alleges that Nokia instructs the alleged direct infringers to adopt any of the allegedly infringing portions of the standards.  At bottom, BlackBerry's allegations merely recite the required elements for an induced infringement claim, but those "'naked assertion[s]' devoid of 'further factual enhancement'" should be disregarded when assessing a claim's sufficiency.  *Iqbal,* 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  Accordingly, the Court should dismiss all of BlackBerry's inducement claims.

### C.    BlackBerry's Amended Complaint Lacks Factual Allegations That Plausibly Show Contributory Infringement.

BlackBerry's contributory infringement allegations formulaically recite the elements of a contributory infringement claim without factual enhancement, and are therefore, insufficient to sustain a claim.  *See, e.g.*, *Twombly*, 550 U.S. at 555; *Chestnut Hill Sound, Inc. v. Apple Inc.*, No. 15-261-RGA, D.I. No. 53 (Feb. 29, 2016)  ("I agree that the claim of contributory

infringement is 'formulaic,' and I will therefore GRANT the motion [to dismiss] in regard to it.").  For each patent, BlackBerry simply states that the accused products "perform or embody a material part of the claimed inventions," are known to be "specially made or adapted for use in an infringing manner," "are not staple articles," and do not "have substantial non-infringing uses."  (*E.g.*, D.I. 21, ¶¶ 122, 124, 143, 145, 159, 161, 175, 177, 194, 196, 213, 215, 234, 236, 250, 252, 276, 278, 291, 293, 311, 313.)  There is no support for those elements.  For example, BlackBerry never explains how Nokia allegedly knows that those products are "specially made or adapted for use in an infringing matter."  Because BlackBerry's contributory infringement claims amount to mere boilerplate assertions, those claims should be dismissed.

**III.    The Court Should Dismiss All Direct Infringement Claims.**

**A.    The Court Should Dismiss BlackBerry's Direct Infringement Claims Against Nokia Corp., NSN Oy, and NSN Holdings USA.**

With little exception, the Amended Complaint refers to the four defendants collectively as "Nokia" and accuses Nokia of directly infringing all patents-in-suit.  But combining infringement allegations against all four Defendants is improper because those allegations do not provide adequate notice as to each Defendant's role in allegedly infringing the patents-in-suit.  *See, e.g.*, *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*, No. 16-581, D.I. No. 20 at 14-15 (D. Del. Mar. 7, 2017), *adopted by* D.I. No. 22 (Mar. 22, 2017); *M2M Sols. LLC v. Telit Commc'ns PLC*, No. 14-1103-RGA, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015).

That is particularly true here where the direct infringement allegations against defendants Nokia Corp., NSN Oy, and NSN Holdings USA are implausible.  First, BlackBerry's claims that Nokia Corp. and NSN Oy—whom BlackBerry describe as Finland-based parent companies—are responsible for alleged infringement by their domestic subsidiaries NSN Holdings USA and NSN US do not satisfy the pleading standard.  FED. R. CIV. P. 8.  This Court has explained that:

> [T]o state a claim "based on an alleged parent-subsidiary relationship, a plaintiff would have to allege: (1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil." . . . . "[T]he existence of an agency relationship between the entities where the parent effectively controls the conduct of the subsidiary" could satisfy the second condition.

*M2M*, 2015 WL 4640400, at *3 (citation omitted).   The Amended Complaint contains no allegations to justify piercing the corporate veil.   Instead, BlackBerry alleges that Nokia Corp. is the Finland-based "parent company" of the Nokia Group (D.I. 21, ¶ 9) and NSN Oy "operates and oversees" the Finland-based business unit that develops, makes, and sells products.   (*Id.*, ¶ 10.)   Those facts do not support the conclusory allegations that either Nokia Corp. or NSN Oy directly infringes any of the asserted claims.   All direct infringement claims against those foreign entities are therefore implausible and should be dismissed.

Similarly, BlackBerry's direct infringement claims against NSN Holdings USA also are implausible.   The Amended Complaint describes NSN Holdings USA as a company providing "support services" to Nokia customers in the United States.   (D.I. 21, ¶ 11.)   Those allegations do not permit an inference that NSN Holdings USA makes, uses, sells, offers to sell, or imports any of the accused products as 35 U.S.C. § 271(a) requires.   For at least this reason, the Court should dismiss all of BlackBerry's infringement claims against NSN Holdings USA.

### B.    This Court Cannot Infer More Than A Mere Possibility Of Infringement.

BlackBerry's direct infringement claims also fail because they do not allow the Court to infer more than the mere possibility of infringement.   *Iqbal*, 556 U.S. at 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (internal quotation marks omitted)).   Although BlackBerry now alleges that compliance with portions of LTE and UMTS/UTRAN standards infringes at least one claim for each of the patents-in-suit, ***BlackBerry newly admits that it has not compared "the claims of the Asserted***

- 17 -

***Patents to the structure and operation of the Infringing Products.***"   (D.I. 21, ¶ 66.)  And the Amended Complaint lacks facts that support a plausible allegation that a standards-compliant product meets each claim element of any claim.  *Atlas IP*, 189 F. Supp. 3d at 775 ("[F]actual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement—they are merely compatible with infringement.").  Even accepting all of BlackBerry's statements—including those made "upon information and belief"—as true, the Amended Complaint contains numerous factual inconsistencies that undermine BlackBerry's infringement allegations.  For example:

**'418 patent:**  BlackBerry accuses products that incorporate "Transmission Mode 4" of infringing the '418 patent claims.  (D.I. 21, ¶¶ 117, 120, 121, 122.)  But the Amended Complaint shows that Transmission Mode 4 is available in two formats: DCI formats 1A and 2. (*Id.*, ¶ 265.)  BlackBerry is silent as to which format allegedly infringes and which Nokia allegedly uses.

**'246 patent:**  BlackBerry accuses products that include or are coupled to two or more transmit antennas and that are compliant with certain 3GPP specifications, which use cell-specific reference signals.  (D.I. 21, ¶¶ 141-46.)  But the Amended Complaint never addresses whether Nokia or its customers perform the allegedly infringing method "for each antenna," as all asserted claims require, nor does it allege that the accused products are required to transmit these cell-specific reference signals.  (*Id.*; *see also* '246 patent, claims 1, 3, 8-10, 15, 17, 22, 23.).

**'090 patent:**  BlackBerry accuses products that use a cyclic redundancy check ("CRC") step described in section 5.3.1 of the LTE TS 36.212 (v. 8.8.0) specification as infringing the '090 patent claims.  (D.I. 21, ¶¶ 157-62.)  But the Amended Complaint contains no allegations that the accused products perform that CRC step.  (*Id.*)

**'305 patent:**   BlackBerry accuses products using the "Large Delay Cyclic Delay Diversity ("CDD")" of Transmission Mode 3 of infringing the '305 patent claims.  (D.I. 21, ¶¶ 169, 170, 173-78.)   But, according to the Amended Complaint, CDD is just one of two possible formats associated with Transmission Mode 3.  (*Id.*, ¶ 265.)  BlackBerry does not allege that the accused products use the CDD format.

**'433 & '697 patents:**   BlackBerry accuses products that use "CS fallback" of infringing the '433 and '697 patent claims.  (D.I. 21, ¶¶ 184, 187, 192-97.)  But, according to the Amended Complaint, CS fallback is optional and conditional upon network configuration.  (*Id.*, ¶ 187 (§ 4.1).)  BlackBerry does not allege that Nokia uses that optional, conditional feature.

**'772 patent:**   BlackBerry accuses products using "Cross Carrier Scheduling" of infringing the '772 patent claims.  (*Id.*, ¶¶ 226, 231-37.)   But according to the Amended Complaint, the allegedly infringing feature is optional, and the Amended Complaint contains no allegations suggesting that Nokia uses that optional cross carrier scheduling feature.  (*Id.*, ¶ 226.)

**'192 patent:**   BlackBerry accuses products using a DRX feature of certain LTE specifications of infringing the '192 patent claims.  (*Id.*, ¶¶ 243, 244, 247-53.)  But section 5.7 of the LTE specification (reproduced in the Amended Complaint) states that DRX depends on UE (user equipment) configuration, and the Amended Complaint does not allege that Nokia determines UE configuration or selects an infringing configuration.  (*Id.*, ¶ 243.)

**'202 patent:**   BlackBerry accuses products implementing DL MU-MIMO used in Transmission Modes 5, 8, 9, and 10 of infringing the '202 patent claims.  But according to the Amended Complaint, each of those modes can be implemented without using DL MU-MIMO. BlackBerry does not allege that the accused products implement DL MU-MIMO. (*Id.*, ¶¶ 265-68.)

**'683 & '829 patents:**  BlackBerry accuses products implementing "Fast Dormancy" of infringing the '683 and '829 patent claims.  (D.I. 21, ¶¶ 286, 288-94, 304-5, 309-14.)  But "Fast Dormancy" depends on receiving a UE message including particular information, and Blackberry never alleges that Nokia is responsible for UE sending such messages.  (*Id.*, ¶ 306.)

In sum, BlackBerry's Amended Complaint does not support a plausible inference that making, using, selling, offering to sell, or importing a standards-compliant product infringes any asserted claim.  Taking all allegations as true does not eliminate any uncertainty as to whether the accused products infringe the asserted patent claims.  For at least all of the reasons described above, the Court should dismiss all direct infringement claims.

## CONCLUSION

For at least the reasons described herein, Nokia respectfully requests that this Court grant its motion to dismiss BlackBerry's Amended Complaint as to all claims for all asserted patents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
    *Attorneys for Defendants*

OF COUNSEL:

Paul A. Bondor
Alan S. Kellman
Jonas R. McDavit
Lauren M. Nowierski
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
(212) 351-3400

July 20, 2017
11196511