IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>NOKIA CORPORATION, NOKIA SOLUTIONS AND NETWORKS OY, NOKIA SOLUTIONS AND NETWORK HOLDINGS USA, INC., & NOKIA SOLUTIONS AND NETWORKS US LLC,<br><br>Defendants. | Civil Action No. 17-cv-155-RGA |

**MEMORANDUM ORDER**

Pending before the Court is Defendants' Motion to Dismiss and/or Compel Arbitration of BlackBerry Limited's Patent Infringement Claim Relating to U.S. Patent No. 8,494,090 ("'090 patent") in Its Amended Complaint (D.I. 24). The issues have been fully briefed. (D.I. 25, 31, 37, 42).

On June 15, 2017, Defendants filed a motion to dismiss Plaintiff's direct, indirect, and willful infringement claims under Rule 12(b)(6). (D.I. 14). I determined that Plaintiff had adequately pled claims for direct infringement and post-suit willful infringement against Defendant Nokia Solutions and Networks US LLC ("NSN US") only. (D.I. 47). I consider this motion only as to those claims that survived Defendants' motion to dismiss.

For the reasons stated herein, Defendants' Motion to Dismiss and/or Compel Arbitration is **DENIED** without prejudice.

## I. BACKGROUND

Nokia Corporation and BlackBerry (previously known as "Research in Motion Limited") entered an agreement ("Agreement") in 2003 under which each entity granted the other a non-exclusive license to various patents. (D.I. 25, p. 2; D.I. 13 at 11-12, 26). Article 12.1 selects Swedish law to govern the Agreement. The Agreement defines "Parties" as "collectively RIM and Nokia who are signatories to this Agreement." (D.I. 13 at 9). NSN US is a Nokia Corporation "Affiliate" under the Agreement. (*Id.* at 8 (defining "Affiliate" to include wholly-owned subsidiaries); D.I. 21 at 4 (Plaintiff alleging NSN US is a wholly-owned subsidiary of Nokia Corporation)).

Article 4.2 of the 2003 Agreement provided Nokia Corporation the option "to obtain a personal, nontransferable, nonexclusive, irrevocable, worldwide, and royalty free license under any five (5) Patent Families of RIM." (D.I. 13 at 16). A 2008 amendment renewed the 2003 Agreement and amended Article 4.2 to give Nokia Corporation the option to license five additional patent families. (*Id.* at 34-35, 37). On December 23, 2013, Nokia Corporation opted to exercise its option under Article 4.2 to license ten patent families, including the '090 patent family. (*Id.* at 50-51; D.I. 25, p. 3; D.I. 42, p. 1).

Whereas Article 2.2.5 permits Nokia Corporation to "grant sublicenses to Nokia Affiliates" on limited terms, Article 4 does not contain a provision permitting sublicenses. (D.I. 13 at 12-13, 14-19).

Articles 12.2 and 12.3 set out an agreed method of dispute resolution:

12.2 In the event of any dispute, controversy or claim arising under, out of or relating to this Agreement and any subsequent amendments of this Agreement, including without limitation, its formation, validity, binding effect, interpretation, performance, breach or termination as well as non-contractual claims (a "Dispute"), within one month of both Parties becoming aware of such a Dispute, the Parties shall meet and attempt to resolve the Dispute.

2

> 12.3 Should the parties fail to resolve a Dispute, the Dispute shall be referred to and finally and conclusively determined by arbitration in accordance with the Rules of the Arbitration Committee of the Swedish Central Chamber of Commerce pursuant to the regulations then in force. The arbitration proceedings shall be conducted in the English language and shall be held in Stockholm, Sweden.

(*Id.* at 25).

Defendants argue contract law compels Plaintiff to arbitrate its claims against Nokia Corporation and its claims against the other three Defendants, including NSN US (collectively, "the NN Defendants") under equitable estoppel and third-party beneficiary theories. (D.I. 37, pp. 5, 8). Plaintiff counters that it cannot be compelled to arbitrate its claims against the NN Defendants because they are not signatories and have no rights under the Agreement. (D.I. 31, pp. 5-6; D.I. 42, p. 4).

## II. LEGAL STANDARD

"[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint), the [Federal Arbitration Act] would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013) (citation omitted) (alteration in original). In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in a complaint as true and consider them in the light most favorable to plaintiff. *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

"[W]hether or not [a] company [i]s bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986) (citation omitted). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there

3

is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted) (alteration in original).

On application of a litigant, Section 3 of the Federal Arbitration Act ("FAA") requires the court "to stay the action if it involves 'an issue referable to arbitration under an agreement in writing.'" *Arthur Andersen LLP v. Carlisle*, 566 U.S. 624, 630 (2009) (quoting 9 U.S.C. § 3). State contract law "is applicable to determine which contracts are binding under § 2 and enforceable under § 3" of the FAA. *Id.* at 630-31. Delaware contract law permits a nonsignatory to a contract to "compel a signatory to arbitrate under an equitable estoppel theory." *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *4 (Del. Ch. Aug. 22, 2006). Equitable estoppel applies in two circumstances: (1) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory," and (2) "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at *5.

## III. DISCUSSION

Plaintiff's first amended complaint acknowledges the Agreement between Plaintiff and Nokia Corporation, and acknowledges Nokia Corporation's "limited license to the '090 patent" under the Agreement. (D.I. 21 at 52). I thus consider the Agreement in resolving this motion. Though the Agreement contains a choice of law provision stating that the laws of Sweden govern the Agreement, neither Plaintiff nor Defendants have asserted that Swedish law should apply to the resolution of their dispute. I will therefore apply Delaware contract law. *See Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440-41 (3d Cir. 1999) ("The parties therefore generally carry both the burden of raising the issue that foreign law may apply in an action, and the burden of

4

adequately proving foreign law to enable the court to apply it in a particular case. ... Where parties fail to satisfy either burden the court will ordinarily apply the forum's law.").

Article 12 is silent regarding Nokia Corporation Affiliates, but mandates that Nokia Corporation and BlackBerry arbitrate "any dispute, controversy or claim arising under, out of or relating to this Agreement and any subsequent amendments." (D.I. 13 at 25). Nokia Corporation licensed the '090 patent under Article 4.2. (*Id.* at 51). Article 4 does not contemplate sublicenses to Nokia Corporation Affiliates. (*Id.* at 12-13, 14-19). By its terms, the Agreement thus does not compel Plaintiff to arbitrate disputes regarding the '090 patent with NSN US. Nor is there any evidence that NSN US is an intended third-party beneficiary of Article 4.2. *See United Health Alliance, LLC v. United Med., LLC*, 2014 WL 6488659, at *3 (Del. Ch. Nov. 20, 2014) (noting that application of third party beneficiary rights require that the benefit was intended and "a material part of the contract's purpose").

Defendants appear to argue that Blackberry is nonetheless compelled to arbitrate its claims against NSN US under an equitable estoppel theory. (D.I. 37, pp. 5, 7 (arguing that Plaintiff's claims against all Defendants are "intertwined," and that the NN Defendants' interests are "at least related to, if not congruent with, Nokia Corporation['s]" interests)). Defendants' argument does not satisfy the requirements to apply equitable estoppel under Delaware contract law. First, Plaintiff's infringement claim against NSN US does not depend on the existence of the Agreement. Second, although Defendants argue that NSN US's interests are "directly related to, if not congruent with" Nokia Corporation's interests, neither Plaintiff nor Defendants assert "substantially interdependent and concerted misconduct" by NSN US and Nokia Corporation. Nor does Plaintiff's amended complaint support such an allegation. (*See* D.I. 47 (dismissing all claims

5

except Plaintiff's direct and post-suit willful infringement claims against NSN US)). Defendants thus may not invoke equitable estoppel to compel Plaintiff to arbitrate its claims against NSN US.

Finally, Defendants argue that Plaintiff should be compelled to arbitrate its claims against NSN US because Nokia Corporation may enforce the arbitration clause in the Agreement against Plaintiff. (D.I. 37, p. 8). As support, Defendants rely on Article 2.2.5, which Defendants maintain gives Nokia Corporation "an interest in protecting its ability to sublicense its Affiliates." (*Id.*). Defendants ignore that Article 4.2, under which Nokia Corporation licensed the '090 patent, does not permit Nokia Corporation to grant sublicenses to its Affiliates. Nokia Corporation's ability to enforce the Agreement's arbitration provision against Plaintiff therefore does not mandate the conclusion that Plaintiff can be compelled to arbitrate its claims against NSN US.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to compel Plaintiff to arbitrate its '090 patent infringement claims is **DENIED** without prejudice.

IT IS SO ORDERED.

Entered this 29 day of March, 2018.

*Richard G. Andrews*
United States District Judge