IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BLACKBERRY LIMITED, | ) | **REDACTED PUBLIC VERSION** |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| NOKIA CORPORATION, NOKIA SOLUTIONS | ) | C.A. No. 17-155-RGA |
| AND NETWORKS OY, AND NOKIA OF | ) |  |
| AMERICA CORPORATION, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |
|  | ) |  |

**PLAINTIFF BLACKBERRY LIMITED'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
<u>LIMITING ARBITRATION</u>**

*Of Counsel:*

Garrard R. Beeney
Stephen J. Elliott
W. Rudolph Kleysteuber
Wen-Ying Angela Chang
Corey Omer
Steve A. Hsieh
Daniel W. Asher
Lisa M. McAnearney
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
(212) 558-4000

Dated:  July 27, 2018

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff BlackBerry Limited*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................4

    A.    Nokia Corporation's "Patent Pick Option"................................................4
    B.    This Action, and This Court's Arbitration Ruling....................................5
    C.    Nokia's Request for Arbitration...............................................................7

RELIEF REQUESTED ..................................................................................................8

ARGUMENT ...............................................................................................................9

I.    BLACKBERRY MEETS THE REQUIREMENTS FOR A PRELIMINARY
    INJUNCTION. ...................................................................................................9

    A.    Probability of Success on the Merits .....................................................10
    B.    Irreparable Harm ....................................................................................11
    C.    Harm to Other Interested Persons and the Public Interest .....................12

II.    COMITY CONCERNS DO NOT MANDATE APPLICATION OF A HIGHER
    STANDARD. ....................................................................................................14

    A.    Private Arbitration Does Not Raise the Same Comity Concerns as Parallel
        Litigation in the Courts of a Foreign Sovereign. ...................................15
    B.    BlackBerry's Request for an Injunction Meets the Heightened Standard. ............17

III.    THE ALL WRITS ACT PROVIDES THAT THE COURT SHOULD GRANT THE
    INJUNCTION BLACKBERRY REQUESTS TO PRESERVE THE COURT'S
    JURISDICTION. ...............................................................................................18

IV.    CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albaugh, Inc.* v. *Arsonate Herbicide Products, Ltd.*,
No. 06-cv-00556, 2009 WL 10702987 (S.D. Iowa Feb. 6, 2009) ...........................20

*American Life Ins. Co.* v. *Parra*,
25 F. Supp. 2d 467 (D. Del. 1998) ........................................................................11

*AmeriSteel Corp.* v. *Teamsters Local 430*,
No. 1:CV-99-2131, 2000 U.S. Dist. LEXIS 22114 (M.D. Pa. Mar. 17, 2000) ......................12

*BAE Sys. Tech. Solution & Servs.*, *Inc.* v. *Republic of Korea's Defense Acquisition*
*Program Admin.*,
195 F. Supp. 3d 776, 797 (D. Md. 2016) ...............................................................16

*In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir. 1985)....................................................................................19

*Bank of America, N.A.* v. *UMB Fin. Servs. Inc.*,
618 F.3d 906 (8th Cir. 2010) ................................................................................19

*Berger* v. *Zeghibe*,
666 F. App'x 119 (3d Cir. 2016) ..........................................................................19

*Century Indem. Co.* v. *Certain Underwriters at Lloyd's, London*,
584 F.3d 513 (3d Cir. 2009).................................................................................10

*Commercializadora Portimex S.A. de C.V.* v. *Zen-Noh Grain Corp.*,
373 F. Supp. 2d 645 (E.D. La. 2005).....................................................................13

*Dandong* v. *Pinnacle Performance Ltd.*,
No. 10-cv-8086, 2011 WL 6156743 (S.D.N.Y. Dec. 12, 2011) ............................17

*Doe* v. *Hesketh*,
828 F.3d 159 (3d Cir. 2016)...................................................................................8

*Dooley* v. *United Techs. Corp.*,
152 F.R.D. 419 (D.D.C. 1993).................................................................................8

*Floral Trade Council of Davis, California* v. *U.S.*,
12 C.I.T. 603 (1988) .............................................................................................13

*Flowserve Corp.* v. *Burns Int'l Servs. Corp.*,
423 F. Supp. 2d 433 (D. Del. 2006)......................................................................13

*General Electric Co* v. *Deutz AG*,
   270 F.3d 144 (3d Cir. 2001) ............................................................................ 14-18

*Grider* v. *Keystone Health Plan Cent., Inc.*,
   500 F.3d 322 (3d Cir. 2007) ...................................................................................18

*Gruntal & Co.* v. *Steinberg*,
   854 F. Supp. 324 (D.N.J. 1994) .............................................................................12

*Instant Air Freight Co.* v. *C.F. Air Freight, Inc.*,
   882 F.2d 797 (3d Cir. 1989) ...................................................................................11

*John Hancock Mut. Life Ins. Co.* v. *Olick*,
   151 F.3d 132 (3d Cir. 1998) ........................................................................2, 10, 11

*Knox* v. *Lederle Labs.*,
   4 F.3d 875 (10th Cir. 1993) ......................................................................................8

*Laker Airways, Ltd.* v. *Sabena*,
   731 F.2d 909 (D.C. Cir. 1984) ................................................................................18

*In re Lernout & Hauspie Sec. Litig.*,
   No. 00-cv-11589, 2003 WL 22964378 (D. Mass. Dec. 12, 2003) .........................13

*Local 1814 Int'l Longshoremen's Assoc.* v. *N.Y. Shipping Assoc.*,
   965 F.2d 1224 (2d Cir. 1992) .................................................................................19

*Meduri Farms, Inc.* v. *Dutchtecsource B.V.*,
   No. 17-cv-906, 2017 WL 6029606 (D. Or. Dec. 5, 2017) ...............................10, 15

*Morgan Stanley & Co., LLC* v. *Couch*,
   659 F. App'x 402 (9th Cir. 2016) ...........................................................................14

*Motorola Credit Corp.* v. *Uzan*,
   No. 02-cv-666, 2002 WL 31319932 (S.D.N.Y. Oct. 16, 2002) ..............................14

*Ne. Women's Ctr., Inc.* v. *McMonagle*,
   868 F.2d 1342 (3d Cir. 1989) ...................................................................................9

*Omnium Lyonnais D'Etancheite et Revetement Asphalte* v. *Dow Chemical Co.*,
   441 F. Supp. 1385 (C.D. Cal. 1977) .......................................................................13

*PaineWebber Inc.* v. *Hartmann*,
   921 F.2d 507 (3d Cir. 1990) ........................................................................2, 3, 9-12

*Pennsylvania* v. *Porter*,
   659 F.2d 306 (3d Cir. 1981) (en banc) ...................................................................19

*Pirito* v. *Penn Engineering World Holdings*,
   833 F. Supp. 2d 455 (E.D. Pa. 2011) ................................................16

*Quaak* v. *Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
   361 F.3d 11 (1st Cir. 2004) .............................................................13

*Reilly* v. *City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017) ..............................................................9

*Rockwell Graphic Sys.* v. *Dev Indus., Inc.*,
   91 F.3d 914 (7th Cir. 1996) ...............................................................9

*S & T Oil Equipment & Machinery, Ltd.* v. *Juridica Investments Ltd.*,
   No. 11-cv-0542, 2011 WL 864837 (S.D. Tex. Mar. 10, 2011) .........................10, 15

*Signator Investors, Inc.* v. *Olick*,
   No. 96-cv-4460, 2002 WL 1965101 (E.D. Pa. Aug. 23, 2002) ..........................9, 12

*Six Clinics Holding Corp.* v. *Cafcomp Systems, Inc.*,
   119 F.3d 393 (6th Cir. 1997) .............................................................16

*TQ Delta, LLC* v. *Zyxel Communications, Inc.*,
   No. 13-cv-02013, 2018 WL 2932728 (D. Del. Jun. 12, 2018) .........................14-18

*United States* v. *N.Y. Tel. Co.*,
   434 U.S. 159 (1977) ......................................................................20

*In re VMS Sec. Litig.*,
   103 F.3d 1317 (7th Cir. 1996) ...........................................................20

**Statutes and Rules**

28 U.S.C. § 1291 ..............................................................................8

The All Writs Act, 28 U.S.C. § 1651 ........................................ 2, 3, 9, 18-20

Federal Rule of Civil Procedure 12(b)(6) .....................................................6

Federal Rule of Civil Procedure 54(b) .....................................................8, 19

Federal Rule of Civil Procedure 65 ...............................1, 3, 9, 12, 14, 19

Plaintiff BlackBerry Limited ("BlackBerry") respectfully moves pursuant to Federal Rule of Civil Procedure 65(a) to enjoin Nokia Corporation, Nokia Solutions and Networks Oy ("Nokia Oy") and Nokia Corporation of America ("Nokia America"; collectively, "Nokia") from re-litigating, in an arbitration proceeding recently commenced by Nokia in Sweden, issues concerning this Court's jurisdiction which this Court has already decided.

## PRELIMINARY STATEMENT

As set out in further detail below, on June 5, 2017, Nokia moved to compel arbitration of BlackBerry's infringement claim based on U.S. Patent No. 8,494,090 (the "'090 Patent"). In its motion, Nokia asserted that a 2003 patent license agreement (the "2003 PLA") between BlackBerry and Nokia Corporation gave it a license to the '090 Patent which Nokia Corporation, the party to the 2003 PLA, could pass on to Nokia Oy and Nokia America as "Affiliates" of Nokia Corporation. At the time the Court ruled on Nokia's motion on March 28, 2018, BlackBerry's infringement claims against Nokia Corporation and Nokia Oy had been dismissed without prejudice. Thus, the Court addressed that part of the motion related to the requests of the remaining defendant, Nokia America, which argued (i) that it had a license to the '090 Patent as an "Affiliate" of Nokia Corporation; and (ii) that it had a right to compel arbitration of any dispute relating to the '090 Patent. The Court rejected both claims, ruling (i) that Article 4 of the 2003 PLA under which Nokia America claimed a sublicense from its corporate parent in fact "does not contemplate sublicenses to Nokia Corporation Affiliates," and that (ii) "[b]y its terms, the [2003 PLA] thus does not compel Plaintiff to arbitrate disputes regarding the '090 Patent with [Nokia America]." (D.I. 48 at 5.)

Completely ignoring this Court's March 28 Order and seeking to vitiate it, on June 29, 2018—17 months after this action commenced—all three Nokia entities filed a demand for arbitration in Sweden under the 2003 PLA asking the arbitral panel to do precisely what this

Court ruled Nokia America and other Affiliates had no right to do. Nokia America sought to compel arbitration with BlackBerry, even though this Court ruled that Nokia America had no right to arbitration under the 2003 PLA. Furthermore, in the demand for arbitration, all three Nokia entities also sought a determination that Nokia Corporation could pass on any license it had to the '090 Patent [REDACTED] to Nokia America, even though this Court already had ruled that 2003 PLA had granted no such 'pass on' rights. To make matters worse, Nokia asked the arbitral panel to order BlackBerry to refrain from asserting against Nokia America the '090 Patent, [REDACTED] and to compel BlackBerry to withdraw from this litigation claims that this Court ruled BlackBerry has every right to assert. Because the Nokia demand for arbitration conflicts with this Court's determinations of the claims this Court has jurisdiction to hear, BlackBerry respectfully requests that the Court (i) enjoin Nokia from seeking a determination that Nokia Corporation "Affiliates" have a license under the 2003 PLA, and (ii) enjoin Nokia America and Nokia Oy (which are not parties to the 2003 PLA) from demanding arbitration under that agreement.

Under the Federal Arbitration Act, federal courts have the power to compel parties to arbitrate where a valid arbitration agreement covering the litigation subject matter exists. But this statutory authority also bestows on federal courts the ability—and duty—to *enjoin* arbitration when a dispute is non-arbitrable. *See PaineWebber Inc.* v. *Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990) ("If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration."), *overruled on other grounds*, *Howsam* v. *Dean Witter Reynolds*, 537 U.S. 79 (2002); *John Hancock Mut. Life Ins. Co.* v. *Olick*, 151 F.3d 132, 136 (3d Cir. 1998)

("[T]he FAA allows a district court to compel, or enjoin, arbitration as the circumstances may dictate . . . ."). Likewise, the All Writs Act, 28 U.S.C. § 1651, empowers this Court to enjoin foreign arbitration that amounts to little more than an end-run around this Court's jurisdiction to decide an infringement case involving U.S. patents and products sold in this country.

BlackBerry respectfully submits that the present circumstances are precisely those in which an injunction against arbitration is appropriate and necessary. Under the familiar factors for assessing an injunction under Federal Rule of Civil Procedure 65, BlackBerry must demonstrate a likelihood of success on the merits and irreparable harm, and the Court may further consider the balance of equities and public interest. Here, the Court has already adjudicated the merits of two issues in BlackBerry's favor: whether Nokia America benefits from any license Nokia Corporation may have under the 2003 PLA, and whether Nokia America can compel arbitration against BlackBerry under the 2003 PLA. Arbitration of a non-arbitrable dispute is "*per se* irreparable" harm. *PaineWebber Inc.*, 921 F.2d at 515. And the equities and public interest weigh strongly against allowing a private party to use a private arbitration forum to divest a federal court of the jurisdiction it has already determined that it has.

Moreover, the injunction that BlackBerry now seeks is narrowly tailored to address the impending harm. BlackBerry does not ask this Court to enjoin the arbitration altogether; as described below, BlackBerry acknowledges that certain disputes with Nokia *Corporation* are indeed arbitrable (although, in BlackBerry's view, procedurally and substantively barred by the terms of the 2003 PLA—issues BlackBerry will raise with the arbitration panel). The narrow relief that BlackBerry seeks is an injunction: (1) prohibiting Nokia America and Nokia Oy from demanding arbitration; (2) prohibiting all three Nokia parties (who remain subject to this Court's jurisdiction) from seeking an arbitral determination that

Affiliates have any rights under Article 4 of the 2003 PLA; and (3) prohibiting any request in the arbitration that BlackBerry must withdraw or dismiss its claims against Nokia America in this Action.

## BACKGROUND

A.      **Nokia Corporation's "Patent Pick Option"**

On December 30, 2003, Research in Motion ("RIM"), the predecessor in interest to BlackBerry (and hereinafter referred to as BlackBerry), and Nokia Corporation entered into the 2003 PLA, ██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████

██████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████



### B. This Action, and This Court's Arbitration Ruling

BlackBerry filed its original Complaint for patent infringement of 11 patents in this Court against Nokia on February 14, 2017. The original complaint named four entities as defendants: Nokia Corporation ("Nokia Corp."), Nokia Oy, Nokia Solutions and Network Holdings USA Inc. ("NSN Holdings"), and Nokia Solutions and Networks US LLC ("NSN US"). Subsequently, NSN Holdings and NSN US merged into Nokia America and the parties have agreed to substitute Nokia America for NSN US. (*See* Stipulation (D.I. 52) at 2.) On June 5, 2017, all Nokia defendant entities made a motion "to dismiss and/or compel arbitration" of claims relating to the '090 Patent (D.I. 11), and a separate motion to dismiss claims under



Federal Rule of Civil Procedure 12(b)(6) (D.I. 14).[3]  After BlackBerry filed its First Amended

Complaint on June 26, 2017, Nokia renewed both the motions to compel arbitration (D.I. 24) and

to dismiss claims (D.I. 26).  On March 20, 2018, addressing the Rule 12(b)(6) motion (*i.e.*,

D.I. 26), this Court ruled that BlackBerry's First Amended Complaint against Nokia Corp.,

Nokia Oy, and NSN Holdings failed to plead sufficient facts regarding infringement by those

entities and dismissed the infringement claims against those entities; the Court ruled that

BlackBerry's claims against what is now Nokia America could proceed.  (D.I. 47.)[4]

On March 28, 2018, this Court denied Nokia's motion to compel arbitration of the

'090 Patent "without prejudice."[5]  (D.I. 48 (the "Arbitration Ruling").)  Because the allegations

against Nokia Corp., Nokia Oy, and NSN Holdings had been dismissed eight days earlier, the

Court considered Nokia's motion to compel "only as to those claims that survived Defendants'

motion to dismiss"—meaning, only regarding claims against Nokia America.  *Id.*

In its Arbitration Ruling, the Court recognized that Nokia Corporation possessed

the patent pick option under ███████████████████████████████████████████

███████.  The Court held, however, that the patent pick option (the only basis for Nokia

---

[3]     For clarity, the remainder of this memorandum refers to any Nokia motion "to dismiss and/or compel arbitration" as a "motion to compel," to distinguish it from separate motions to dismiss.

[4]     BlackBerry has moved for reconsideration of the Court's dismissal of its indirect infringement claims, including against NSN Holdings.  (D.I. 50-51.)

[5]     The March 28 Order adjudicated issues raised by Nokia that permitted BlackBerry to proceed with its '090 Patent claim against Nokia America.  While "without prejudice" may have an impact on further proceedings before this Court, we respectfully submit that "without prejudice" certainly was not an invitation for Nokia to re-litigate elsewhere issues determined by this Court that were necessary to the Court's jurisdiction.

Corporation's claim that it has a license to the '090 Patent) did not extend to "Affiliates," as those agreements defined the term:

- "Whereas Article 2.2.5 permits Nokia Corporation to 'grant sublicenses to Nokia Affiliates' on limited terms, ***Article 4*** [*i.e.*, the patent pick option] ***does not contain a provision permitting sublicenses***." (D.I. 48 at 2 (emphasis added).)

- "***Article 4 does not contemplate sublicenses to Nokia Corporation Affiliates . . . . By its terms, the Agreement thus does not compel Plaintiff to arbitrate disputes*** regarding the '090 patent ***with [Nokia America]***. Nor is there any evidence that [Nokia America] is an intended third-party beneficiary of Article 4.2." (*Id.* at 5 (emphasis added; citations omitted).)

- "Defendants [*i.e., all Nokia entities*] ignore that Article 4.2, under which Nokia Corporation licensed the '090 patent, does not permit Nokia Corporation to grant sublicenses to its Affiliates. Nokia Corporation's ability to enforce the Agreement's arbitration provision against Plaintiff therefore does not mandate the conclusion that Plaintiff can be compelled to arbitrate its claims against [Nokia America]." (*Id.* at 6.)

C.     **Nokia's Request for Arbitration**

[REDACTED]

█████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████

█████████████████████████████████████████████████

██ on June 29, 2018, Nokia submitted its demand for arbitration to the SCC Arbitration Institute in Sweden. ████████████████████████████████

█   ██████████████████████████████████████████████
    █████████████████████████████████████████████████
    ████████████████████████████████████████████████
    ██████████████████████████████████████████████
    ████████████████

█   ███████████████████████████████████████████
    █████████████████████████████████████████████████
    ███████████████████████████████████████████
    ████████████████████████████████

████ ████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

## RELIEF REQUESTED

As noted above, BlackBerry seeks an injunction preventing Nokia from re-litigating in arbitration matters this Court necessarily decided *on Nokia's motion* to compel arbitration of BlackBerry's claim under the '090 Patent against Nokia America. BlackBerry requests an order: (i) enjoining Nokia America and Nokia Oy from demanding arbitration; (ii) prohibiting all three Nokia parties that filed the demand for arbitration from seeking an arbitral determination that "Affiliates" of Nokia Corporation have any rights under ██████ the 2003 PLA; and (iii) prohibiting any request in the arbitration that BlackBerry must withdraw or dismiss its claims against Nokia America in this Action.

For the avoidance of doubt, BlackBerry *does not seek* to enjoin the entire Swedish arbitration, and BlackBerry *does not dispute* that it agreed in 2003 to arbitrate certain issues with Nokia Corporation.[6] BlackBerry fully expects that even if this Motion is granted, certain

---

[6] Both Nokia Corporation and Nokia Oy are subject to any injunction for several reasons. *First*, both remain parties to this action, since the claims against them were dismissed "without prejudice" (D.I. 47 at 8), and no final judgment has been entered. *See Doe* v. *Hesketh*, 828 F.3d 159, 164 (3d Cir. 2016) (ordinarily, dismissal "without prejudice" is not a "final" judgment within the meaning of 28 U.S.C. § 1291). The plain text of Federal Rule of Civil Procedure 54(b) states that a non-final order adjudicating the rights of fewer than all of the parties to an action "does not end the action as to any of the claims or parties." *See also Dooley* v. *United Techs. Corp.*, 152 F.R.D. 419, 424 (D.D.C. 1993) ("[T]h[e] Court has no basis for questioning the plain meaning of Rule 54(b) and therefore concludes that [one defendant dismissed without prejudice] remained a party to the case subsequent to the Court's nonfinal . . . Order [of dismissal]."); *accord Knox* v. *Lederle Labs.*, 4 F.3d 875, 878 (10th Cir. 1993) (under a state Rule 54(b) "identical to the federal rule," where claims against a party were dismissed but the party never sought a final judgment, the entity "remained a party to the action" during later procedural developments). *Second*, Nokia Corporation and Nokia Oy may also be bound because they are actively participating with Nokia America in the improper Swedish arbitration,

remaining aspects of the dispute between Nokia Corporation and BlackBerry may be resolved by

the arbitral tribunal, potentially including whether Nokia Corporation complied with threshold

procedural requirements to arbitrate. [REDACTED]

## ARGUMENT

## I.   BLACKBERRY MEETS THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

When seeking an injunction prior to completing litigation under Rule 65, a party

"must show as a prerequisite '(1) a reasonable probability of eventual success in the litigation,

and (2) that it will be irreparably injured . . . if relief is not granted.'" *Reilly* v. *City of*

*Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth.* v. *Transamerican*

*Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)).  In addition, a court "should take

into account, when they are relevant, (3) the possibility of harm to other interested persons from

the grant or denial of the injunction, and (4) the public interest."  *Id.* (quoting *Oburn* v. *Shapp*,

521 F.2d 142, 147 (3d Cir. 1975)).

These same factors are considered in determining whether to enjoin arbitration

under the Federal Arbitration Act.  *Signator Investors, Inc.* v. *Olick*, No. 96-cv-4460, 2002 WL

1965101 (E.D. Pa. Aug. 23, 2002); *see also PaineWebber*, 921 F.2d at 515 (analyzing only the

---

and Rule 65(d)(2) provides that an injunction may bind "other persons who are in active concert or participation with [a party]."  *See also Ne. Women's Ctr., Inc.* v. *McMonagle*, 868 F.2d 1342, 1355-56 (3d Cir. 1989) (rejecting defendants' argument "that the district court [wa]s limited . . . to enjoining the three Defendants found liable," noting that Rule 65(d) "expressly provides an injunction will be binding on persons 'in active concert or participation' with the parties enjoined who receive actual notice of the order," and noting that "it appear[ed] that the record would support an injunction directed to concerted conduct"); *Rockwell Graphic Sys.* v. *Dev Indus., Inc.*, 91 F.3d 914, 919 (7th Cir. 1996) (collecting cases).  *Finally*, as discussed *infra* (*see* page 19), the All Writs Act permits the Court to enjoin parties and non-parties alike if they are in a position to frustrate the implementation of a court order.

first two factors).  Indeed, in the same context present here, the Third Circuit has held that "[i]f a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, *it is obliged to enjoin arbitration*." *PaineWebber Inc.*, 921 F.2d at 511 (emphasis added); *cf. John Hancock Mut. Life Ins.*, 151 F.3d at 136 (under the FAA, courts have the power to enjoin arbitration "as the circumstances may dictate").  This is true whether the arbitration to be enjoined is domestic or foreign.  *E.g.*, *Meduri Farms, Inc.* v. *Dutchtecsource B.V.*, No. 17-cv-906, 2017 WL 6029606 (D. Or. Dec. 5, 2017) (granting request for preliminary injunction against an international arbitration under the traditional factors); *S & T Oil Equipment & Machinery, Ltd.* v. *Juridica Investments Ltd.*, No. 11-cv-0542, 2011 WL 864837 (S.D. Tex. Mar. 10, 2011) (analyzing request for TRO against international arbitration under traditional preliminary injunction factors); *cf. Century Indem. Co.* v. *Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) (FAA analysis of an agreement's existence "applies equally in domestic and international arbitration contexts").

As shown below, each of these factors weighs in favor of granting the injunction requested by BlackBerry.

## A.      Probability of Success on the Merits

BlackBerry's likelihood of success on the merits of the subject of the requested injunction (whether Nokia America and other Affiliates have a license to the '090 Patent under the 2003 PLA and Nokia America's ability to compel BlackBerry to arbitrate) has already been determined in BlackBerry's favor by this Court.  (*See* pages 6-7, *supra*.)

As to Nokia America's claim for arbitration in Sweden, this Court has already held that "[b]y its terms, the Agreement . . . does not compel Plaintiff to arbitrate disputes regarding the '090 patent with [Nokia of America].  Nor is there any evidence that [Nokia of America] is an intended third-party beneficiary of Article 4.2."  (Arbitration Ruling (D.I. 48)

at 5; *accord id.* at 6 ("Nokia Corporation's ability to enforce the Agreement's arbitration provision against Plaintiff therefore does not mandate the conclusion that Plaintiff can be compelled to arbitrate its claims against [Nokia America]").)  Thus, in denying Nokia's motion to compel arbitration, this Court has already determined that "a valid arbitration agreement does not exist" between BlackBerry and Nokia's Affiliates.  *PaineWebber*, 921 F.2d at 511.

As to Nokia's claim that patent pick option licenses can be extended to Affiliates, including Nokia America, this Court has already held that "Article 4.2 . . . does not permit Nokia Corporation to grant sublicenses to its Affiliates."  (Arbitration Ruling (D.I. 48) at 6.)  It has also held that "Article 4 [of the 2003 PLA] does not contemplate sublicenses to Nokia Corporation Affiliates."  (*Id.* at 5.)  Any issue of Nokia's Affiliates' substantive rights therefore "falls outside of the substantive scope of the agreement."  *PaineWebber*, 921 F.2d at 511.

Thus, "based on the agreement to arbitrate itself," this Court has already determined BlackBerry to be successful on the merits.  *John Hancock*, 151 F.3d at 137.  Having reached those determinations, it follows under *PaineWebber* that the Court is "obliged to enjoin" Nokia from re-litigating those issues in a Swedish arbitration.  *PaineWebber*, 921 F.2d at 511.

### B. Irreparable Harm

In order to demonstrate irreparable injury, the movant "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The . . . injunction must be the only way of protecting the plaintiff from harm."  *Instant Air Freight Co.* v. *C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  However, "[t]he Third Circuit recognizes a party is irreparably harmed as a matter of law if forced to arbitrate a matter that it has not agreed to arbitrate."  *American Life Ins. Co.* v. *Parra*, 25 F. Supp. 2d 467, 479 (D. Del. 1998).

As described above, this Court has held that BlackBerry never agreed to arbitrate its claims with Nokia America. (*See*, *e.g.*, Arbitration Ruling (D.I. 48) at 5 ("Article 4 does not contemplate sublicenses to Nokia Corporation Affiliates . . . . By its terms, the Agreement thus does not compel Plaintiff to arbitrate disputes regarding the '090 patent with [Nokia America]") (citations omitted).) Thus, allowing Nokia to continue arbitrating with that entity causes irreparable damage to BlackBerry as a matter of law. *See PaineWebber Inc.*, 921 F.2d at 515 ("[T]he harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction," instead requiring the movant to "submit to an arbitrator's own determination of his authority."); *Gruntal & Co.* v. *Steinberg*, 854 F. Supp. 324, 341-42 (D.N.J. 1994) (finding "*per se* irreparable harm" where "[plaintiff] has not agreed to arbitration of any sort with respect to the claims raised in the Arbitration Proceedings"); *AmeriSteel Corp.* v. *Teamsters Local 430*, No. 1:CV-99-2131, 2000 U.S. Dist. LEXIS 22114, at *8 (M.D. Pa. Mar. 17, 2000) ("[I]f [plaintiff] is not obligated to arbitrate pursuant to the collective bargaining agreement but is nonetheless compelled to submit to arbitration, it will suffer irreparable harm."); *Signator Investors, Inc.*, 2002 WL 1965101, at *2 ("*per se* irreparable harm").

**C.     Harm to Other Interested Persons and the Public Interest**

The injunction that BlackBerry seeks would not affect any parties other than Nokia. Thus, this Court need not consider harm to other interested persons in its Rule 65 analysis.

As for the public interest, the requested injunction would protect the Court's determination of its own jurisdiction to hear BlackBerry's claims and prevent duplicative litigation, both of which serve the public interest.

It is well settled that an injunction to protect the Court's jurisdiction is in the public interest. *See Floral Trade Council of Davis, California* v. *U.S.*, 12 C.I.T. 603, 604 (1988) ("the overriding public interest is in preserving the court's jurisdiction to resolve the dispute"); *Omnium Lyonnais D'Etancheite et Revetement Asphalte* v. *Dow Chemical Co.*, 441 F. Supp. 1385, 1390 (C.D. Cal. 1977) ("the preliminary injunction is necessary in the public interest to protect this Court's jurisdiction"); *Commercializadora Portimex S.A. de C.V.* v. *Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 653 (E.D. La. 2005) ("the injunction will not undermine the public interest, which in this case is embodied by the Court's strong interest in protecting its own jurisdiction and judgment").

Similarly, promoting judicial economy by avoiding duplicative litigation is also in the public interest. *See Flowserve Corp.* v. *Burns Int'l Servs. Corp.*, 423 F. Supp. 2d 433, 440 (D. Del. 2006) (stating that by granting the injunction "the Court will prevent duplicative litigation against Burns thereby conserving judicial resources and protecting the integrity of the Court's jurisdiction over this action"). Entry of the requested injunction maximizes judicial economy and conservation of scarce judicial resources, while minimizing the effect of Nokia's further attempts at delaying relief to BlackBerry.

As to the balance of equities between Nokia and BlackBerry, courts have held that the balance is in favor of an injunction when a court "act[s] to protect the litigants' rights to fair pretrial proceedings and its own jurisdiction." *In re Lernout & Hauspie Sec. Litig.*, No. 00-cv-11589, 2003 WL 22964378, at *2 (D. Mass. Dec. 12, 2003), *aff'd sub nom. Quaak* v. *Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20-21 (1st Cir. 2004) (in affirming *In re Lernout*, also holding that "[w]here, as here, a party institutes a foreign action in a blatant attempt to evade the rightful authority of the forum court, the need for an antisuit injunction

crests. . . . If [the party opposing the injunction] had not filed a foreign petition calculated to generate interference with an ongoing American case, the district court would have had no need to issue a defensive injunction that sought only to preserve the court's ability to adjudicate the claims before it according to the law of the United States."); *cf. Motorola Credit Corp.* v. *Uzan*, No. 02-cv-666, 2002 WL 31319932, at *4 (S.D.N.Y. Oct. 16, 2002) (omitting analysis of Fed. R. Civ. P. 65 factors, but enjoining certain foreign arbitrations pursuant to Rule 65, where it was "painfully obvious" that they "were commenced in an effort to undercut the prior orders of, and proceedings before, this Court").

　　　　Finally, Nokia's delay in seeking the arbitration also results in a balance of the equities that favors an injunction. *See Morgan Stanley & Co., LLC* v. *Couch*, 659 F. App'x 402, 405-06 (9th Cir. 2016) (affirming preliminary injunction against arbitration favored by balance of the equities because one party's 13-month delay in asserting arbitration rights would force the other party "to re-litigate [in arbitration] claims it likely has no duty to arbitrate at all"). Here, Nokia waited 17 months after this action commenced, more than a year after its original motion to compel arbitration, and several months after this Court had decided the motion, to actually commence an arbitration. In essence, Nokia waited until it realized it could not get the decision it wanted from this Court, then decided to retry its luck in another forum.

## II.　COMITY CONCERNS DO NOT MANDATE APPLICATION OF A HIGHER STANDARD.

　　　　Courts in this Circuit have held that a somewhat heightened standard applies to injunctions to prevent a party from engaging in parallel proceedings in the *courts* of a foreign state. *See General Electric Co* v. *Deutz AG*, 270 F.3d 144 (3d Cir. 2001); *TQ Delta, LLC* v. *Zyxel Communications, Inc.*, No. 13-cv-02013, 2018 WL 2932728 (D. Del. Jun. 12, 2018). Such a standard is inapplicable here, because BlackBerry's request to enjoin Nokia (in part) from

participating in private arbitration in Sweden does not raise the comity concerns regarding the courts of a foreign sovereign nation that provide the basis for invoking this heightened standard. *See Meduri Farms, Inc.* v. *Dutchtecsource B.V.*, No. 17-cv-906, 2017 WL 6029606 (D. Or. Dec. 5, 2017) (granting international antiarbitration injunction without considering comity); *see also S & T Oil Equip. & Mach., Ltd.* v. *Juridica Invs. Ltd.*, No. 11-cv-0542, 2011 WL 864837 (S.D. Tex. Mar. 10, 2011) (analyzing request for TRO of international arbitration without considering comity). But even if the heightened standard were applicable, an injunction would still be warranted, as it would be necessary to protect the Court's jurisdiction.

A.   **Private Arbitration Does Not Raise the Same Comity Concerns as Parallel Litigation in the Courts of a Foreign Sovereign.**

In *TQ Delta, LLC* v. *Zyxel Comm'ns, Inc.*, this Court followed a two-step analysis for the issuance of an antisuit injunction against proceedings in the courts of a foreign country. In doing so, the Court applied the Third's Circuit's decision in *General Electric Co.* v. *Deutz AG*, 270 F.3d 144 (3d Cir. 2001). First, as a threshold matter, the Court held that the applicant for an injunction must show that its case will be dispositive of the proceeding to be enjoined. *TQ Delta*, 2018 WL 2932728, at *3 (citing *Deutz*, 270 F.3d at 157-58). If the threshold is met, the applicant must show that an injunction is necessary to either protect this Court's jurisdiction or an important public policy. *TQ Delta*, 2018 WL 2932728, at *3; *Deutz*, 270 F.3d at 161.

The Third Circuit made clear in *Deutz* that this heightened standard is motivated by, and the result of, a "serious concern for comity." *Id.*; *see also id.* at 159-160 ("[i]n parallel litigation, the issue of comity is an important and omnipresent factor"). As comity is "the recognition which one *nation* allows within its territory to the legislative, executive or judicial acts of *another nation*," *id.* at 160 (quoting *Hilton* v. *Guyot*, 159 U.S. 113, 164 (1895)) (emphasis added), it is a concept primarily concerned with interactions with a foreign state. In *TQ Delta*,

this Court reiterated that comity concerns are the driving force behind the standard, noting that the Third Circuit's "decisions have reflected its serious concern for comity, its respect for the sovereignty of other courts, and its faith in the ability of other courts to handle parallel proceedings in a fair and just manner without interference." 2018 WL 2932728, at *2 (quoting *Bro-Tech Corp.* v. *Thermax, Inc.*, 2007 WL 2597618, at *3 (E.D. Pa. Sept. 4, 2007)). And indeed, in both *Deutz* and *TQ Delta*, the issue was whether to enjoin participation in litigation before the courts of a sovereign state—namely the High Court of Justice in the United Kingdom. *Deutz*, 270 F.3d at 149; *TQ Delta*, 2018 WL 2932728, at *1. Because the heightened standard for an injunction against parallel proceedings in the High Court of the United Kingdom was not met, both this Court in *TQ Delta* and the Third Circuit in *Deutz* declined to grant one.

Here, however, BlackBerry seeks to enjoin a proceeding between private parties before a private arbitration panel that happens to be located overseas. Private arbitration does not implicate the comity concerns that drove application of the heightened standard in *TQ Delta* and *Deutz*. *See Six Clinics Holding Corp.* v. *Cafcomp Systems, Inc.*, 119 F.3d 393, 398 (6th Cir. 1997) ("Staying a private voluntary arbitration proceeding does not implicate these concerns about comity . . . ."); *Pirito* v. *Penn Engineering World Holdings*, 833 F. Supp. 2d 455, 475 (E.D. Pa. 2011) ("*Hilton* thus makes clear that comity is grounded in mutual respect between sovereigns for their official acts. The [defendants] have not explained why considerations of comity require a *national court* of this country to accord similar respect to the decisions of a *private tribunal* in another country." (discussing *Hilton* v. *Guyot*, 159 U.S. 113 (1895))); *BAE Sys. Tech. Solution & Servs.*, *Inc.* v. *Republic of Korea's Defense Acquisition Program Admin.*, 195 F. Supp. 3d 776, 797 (D. Md. 2016) ("Comity concerns . . . are least when the party to be

enjoined is a private individual . . . .").  Because comity is not implicated in this dispute, there is no basis to apply the heightened standard for an antisuit injunction.

**B.      BlackBerry's Request for an Injunction Meets the Heightened Standard.**

Moreover, even if this heightened standard did apply (it does not), BlackBerry would still satisfy it because an injunction is necessary to protect this Court's jurisdiction.  The first part of the heightened standard asks "whether the substance of the claims and arguments raised in the two actions is the same."  *Dandong* v. *Pinnacle Performance Ltd.*, No. 10-cv-8086, 2011 WL 6156743, at *4 (S.D.N.Y. Dec. 12, 2011) (quoting *In re Vivendi Universal*, 2009 U.S. Dist. Lexis 110283, at *41 & n.12 (S.D.N.Y. Nov. 12, 2009)).  Here, Nokia seeks to re-litigate two central issues that have already been decided by this Court:  (1) whether Nokia Corporation may sublicense the patents at issue to its subsidiaries, and (2) whether BlackBerry must arbitrate its claims against Nokia America.  The substance of the claims and issues is thus the same, and they have already been decided by this Court.

At the second step of the heightened standard, and most fundamentally, the injunction BlackBerry seeks is necessary to protect this Court's jurisdiction.  Nokia has asked the Swedish tribunal to prevent BlackBerry from participating in this Action, which seeks to adjudicate the infringement of U.S. patents under U.S. law.  This Court has already ruled that it is the proper forum to decide such issues.  Nokia's application to the Swedish arbitration panel thus presents an immediate threat to this Court's jurisdiction.

By contrast, no such immediate threat was present in *Deutz* or *TQ Delta*.  In *Deutz*, the High Court had already made clear that it would not issue the injunction that would threaten the U.S. court's jurisdiction.  *See* 270 F.3d at 159.  In *TQ Delta*, no injunction had been sought from the foreign court.  *See* 2018 WL 2932728, at *1-2 (describing U.K. action without mentioning any injunction sought against U.S. proceedings).

There is also a second independent ground to grant an injunction here that was not present in *Deutz* or *TQ Delta*. Under *Deutz*, an injunction may also be granted because it is necessary to protect an important public policy. Such a policy is generally one based on "a statute of specific applicability upon which the party seeking an injunction may have relied, and which is designed to effectuate important state policies." *Laker Airways, Ltd.* v. *Sabena*, 731 F.2d 909, 931 n.73 (D.C. Cir. 1984). Here, BlackBerry has relied on the important U.S. policy of protecting U.S. patent rights as reflected in the relevant U.S. statutes. By contrast, in *Deutz*, the dispute was for breach of contract and did not implicate such concerns. 270 F.3d at 148. Similarly, in *TQ Delta*, the court proceeding to be enjoined concerned European patents, which did not raise such an important U.S. policy. 2018 WL 2932728, at *1.

Thus, even under the heightened standard for antisuit injunctions, BlackBerry would still be entitled to an injunction.

## III. THE ALL WRITS ACT PROVIDES THAT THE COURT SHOULD GRANT THE INJUNCTION BLACKBERRY REQUESTS TO PRESERVE THE COURT'S JURISDICTION.

Even if the Court's prior determination that BlackBerry is not compelled to arbitrate its claims against Nokia affiliates were not sufficient to demonstrate a likelihood of success and irreparable harm sufficient to enjoin the arbitration as requested, the All Writs Act provides an independent basis for the Court to issue the requested injunction.

Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act "confers on courts extraordinary powers that are firmly circumscribed." *Grider* v. *Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 328 (3d Cir. 2007) (internal quotation marks omitted). Among these circumscribed powers is the "inherent ability to protect [the court's] own jurisdiction over the

dispute pending before it" by enjoining an arbitration. *Bank of America, N.A.* v. *UMB Fin. Servs. Inc.*, 618 F.3d 906, 914 (8th Cir. 2010); *see also Local 1814 Int'l Longshoremen's Assoc.* v. *N.Y. Shipping Assoc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) (affirming grant of antiarbitration injunction because "[o]nce the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act authorizes a federal court to protect that jurisdiction").

Here, Nokia is attempting to circumvent this Court's jurisdiction by asking the Swedish arbitration panel to reach contrary conclusions on two issues that this Court has decided. Nokia also asks the arbitrators to order BlackBerry to stop pursuing litigation that this Court permitted BlackBerry to continue. These are precisely the circumstances in which an injunction under the All Writs Act is warranted.

Moreover, "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *Pennsylvania* v. *Porter*, 659 F.2d 306, 325 (3d Cir. 1981) (en banc) (quoting *United States* v. *N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)); *see also Berger* v. *Zeghibe*, 666 F. App'x 119, 123 (3d Cir. 2016) (same); *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) ("An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision."). In short, even if the Court determined that Rule 54 and Rule 65 do not authorize an injunction against Nokia Corporation and Nokia Oy under the present circumstances, separate and sufficient authority for such an injunction exists pursuant to the All Writs Act.

Further, although neither the Court's ruling on dismissal (D.I. 47) nor this Court's ruling on the motion to compel arbitration (D.I. 48) are yet judgments, it is clear that the Court's injunctive powers under the All Writs Act run continuously, from protecting jurisdiction during a proceeding to protecting a judgment after the proceeding is concluded. *See United States* v. *N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of *orders* it has previously issued in its exercise of jurisdiction otherwise obtained") (emphasis added); *In re VMS Sec. Litig.*, 103 F.3d 1317, 1324 (7th Cir. 1996) ("Other circuits have similarly approved a district court's use of the All Writs Act to prevent litigants from frustrating or circumventing its *orders* . . . ." (emphasis added)), *overruled on other grounds*, *Envision Healthcare, Inc.* v. *PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010); *Albaugh, Inc.* v. *Arsonate Herbicide Products, Ltd.*, No. 06-cv-00556, 2009 WL 10702987 (S.D. Iowa Feb. 6, 2009) (enjoining arbitration based on order on subject matter jurisdiction prior to judgment).

## IV.    CONCLUSION

For the foregoing reasons, BlackBerry respectfully asks that the Court enter a preliminary injunction as described above and in the accompanying Proposed Order.

*Of Counsel:*

Garrard R. Beeney
Stephen J. Elliott
W. Rudolph Kleysteuber
Wen-Ying Angela Chang
Corey Omer
Steve A. Hsieh
Daniel W. Asher
Lisa M. McAnearney
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
(212) 558-4000


Dated:  July 27, 2018

ASHBY & GEDDES

/s/ Andrew C. Mayo
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff BlackBerry Limited*